UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. |
| | § | |
| EUROBULK LTD. | § | |

**STIPULATION OF FACT IN SUPPORT OF GUILTY PLEA**

The defendant, EUROBULK LTD., has agreed to stipulate with the United States Attorney for the Southern District of Texas, through the undersigned Assistant United States Attorney, and the Environmental Crimes Section, through the undersigned Senior Trial Attorney, to the following facts. The parties agree that these facts are sufficient to establish a factual basis for the defendant's plea to the Information, pursuant to Fed. R. Crim. P. 11(b)(3). At all relevant times:

(1) At all times relevant, Defendant operated the *Motor Vessel ("M/V") Good Heart*. The *M/V Good Heart* was a 36,354 gross ton bulk-carrier commercial vessel registered in Liberia. The *M/V Good Heart* transported cargo internationally and into Corpus Christi, Texas. Defendant is a Greece-domiciled company with offices at 4, Messogiou Street & Evropis Street, Marousi, 151 24 Athens, Greece. The M/V Good Heart had a Chief Engineer who was responsible for all operations in the engine room. He supervised several lower-ranking engine room personnel including a Second Engineer, Third Engineer, Fourth Engineer, and three Oilers. The crew's actions were done within the scope of their agency and employment for Defendant, and were intended to benefit Defendant, at least in part.

(2) On vessels such as the *M/V Good Heart*, oily engine room waste, including oily mixtures, sludge, waste oil, and machinery space bilge water, is generated on a regular basis. "Oily mixture" means a mixture, in any form, with oil content. "Machinery space bilge water" refers to oil and water that drips and leaks from machinery and mechanical systems and accumulates in the bilge, which is the

bottom-most portion of the engine room. "Machinery space bilge water" is also known as "oily bilge water" and is defined in 33 C.F.R. § 151.05 as "water which may be contaminated by oil resulting from things such as leakage or maintenance work in machinery spaces. Any liquid entering the bilge system including bilge wells, bilge piping, tank tops or bilge holding tanks is considered oily bilge water." The *M/V Good Heart* has a "duct keel" which is a space at the bottom of the vessel that runs the length of the vessel and contains various piping that connects to several areas of the ship. The duct keel is not designed, nor permitted, to be an area for the storage of water or oil. Any oil and water mixture in the duct keel is "oily bilge water," and must be disposed in the same manner as machinery space bilge water.

(3) Machinery space bilge water can be disposed of in two manners: (1) it may be processed through the onboard Oily Water Separator ("OWS") and Oil Content Monitor ("OCM") resulting in an overboard discharge of water with no more than 15 parts per million ("ppm") of oil, or (2) it may be disposed of via barge or other shore-based disposal facility. Prior to processing or disposal, machinery space bilge water must be transferred to, and stored in, the vessel's bilge water holding tank.

(4) All disposals and transfers of bilge water, including the use of the OWS, or transfer to a shore-based facility, must be recorded by the person or persons in charge of those operations in the vessel's Oil Record Book ("ORB"). The Chief Engineer was the person in charge of these operations and required to make accurate entries in the vessel's ORB.

(5) In April 2023, on at least two occasions, the Chief Engineer ordered lower ranking engine personnel to discharge the contents of the duct keel directly overboard. The contents of the duct keel contained hydraulic oil through a leaking hydraulic pipe in the control system of a ballast valve and predominantly water. These discharges were not made through the OWS, and these discharges were not recorded in the ORB.

(6) In April 2023, the Chief Engineer ordered the Second Engineer to make a fresh water connection to the OCM. By making such a connection, the OCM was "tricked" so that the device could not verify the actual oil content of the discharge. By using this set-up, the OCM only sensed the fresh water and not the actual output

of the OWS. After the connection was made, the Chief Engineer ordered the Second Engineer to start the OWS. The OWS was used to discharge the contents of the bilge tank directly overboard while the OCM was unable to detect the content of the oil in the effluent. This discharge was not recorded in the ORB.

(7) On April 29, 2023, members of the United States Coast Guard ("U.S. Coast Guard") conducted a Port State Control examination of the *M/V Good Heart*. During the examination, the Chief Engineer provided the U.S. Coast Guard with the ORB. At the time, the Chief Engineer knew the ORB was false. The presentation of the false ORB was intent to deceive the U.S. Coast Guard about the discharges from the duct keel and the manipulation of the OCM.

(8) During the examination, U.S. Coast Guard personnel interviewed several crewmembers who denied knowledge of discharges from the duct keel or that the OCM on the OWS had been tricked with fresh water.

(9) Prior to the vessel's arrival in Corpus Christi, the Second Engineer, through his counsel, had provided the U.S. Coast Guard with numerous photographs and videos that documented the duct keel discharges and the manipulation of the OCM. The Second Engineer also surreptitiously recorded several crewmembers who described the discharges. In addition, he recorded the Chief Engineer discussing discharges from the duct keel and the manipulation of the OCM.

(10) Defendant is accepting criminal vicarious liability for the actions of the Chief Engineer. Defendant's shore-side managers were never informed by the Chief Engineer of the discharges from the duct keel or the manipulation of the OCM.

The undersigned have thoroughly reviewed, understand, and agree that the information contained in this Stipulation of Fact is true and correct.

EUROBULK LTD.
Defendant

Attorney for Defendant

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

By:
LIESEL L. ROSCHER
Assistant United States Attorneys

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
Department of Justice

By:
KENNETH E. NELSON
Senior Trial Attorney
Environmental Crimes Section